In re LONG DISTANCE
TELECOMMUNICATIONS
LITIGATION.

Charles KAPLAN, et al.,
Plaintiffs–Appellants,

v.

ITT–U.S. TRANSMISSION SYSTEMS,
INC.; et al., Defendants–Appellees.

Roger LEE, et al., Plaintiffs–Appellants,

v.

WESTERN UNION TELEGRAPH COM-
PANY, et al., Defendants–Appellees.

Nos. 85–1684, 86–1599.

United States Court of Appeals,
Sixth Circuit.

Argued April 27, 1987.

Decided Oct. 9, 1987.

As Amended on Denial of Rehearing
Dec. 1, 1987.

Fay Clayton, Carolyn Hope Rosenberg Safer (argued), Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., Charles R. Watkins, Lawrence W. Abel, Greenfield & Chimicles, Haverford, Pa., Mark F. Anderson, San Francisco, Cal., James A. Mangione and Margaret G. Dobies, San Diego, Cal., for plaintiffs-appellants in No. 85–1684.

Richard J. Gray (argued), Chicago, Ill., for MCI Telecommunications Corp.

Howard G. Kristol, Wm. I. Sussman, Reboul, MacMurray, HeWitt, Maynard & Kristol, New York City, for GTE Sprint Communications Corp.

Michael W. Ward, John F. Ward, Jr., Chicago, Ill., for U.S. Telephone of the Midwest, Inc.

Mitchell S. Goldgehn, Chicago, Ill., for Allnet Communications Services.

Mark Anderson, San Francisco, Cal., for plaintiffs-appellants in No. 86–1599.

Robert P. Hurlbert, Bloomfield Hills, Mich., Maureen H. Burke, Detroit, Mich., Robert M. Chilvers, San Francisco, Cal., Robert L. Sills, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for defendants-appellees in No. 86–1599.

Before LIVELY, Chief Judge, and GUY and BOGGS, Circuit Judges.

LIVELY, Chief Judge.

These consolidated appeals deal with the application of the doctrines of primary jurisdiction and preemption. The plaintiffs are customers of the defendants, which are companies engaged in providing long distance telephone services. The complaints charged violations of federal statutes and of state and federal common law based on the defendants' practice of charging for uncompleted calls, ring time and holding time, and failing to inform customers of this practice. The defendants are competitors of American Telephone & Telegraph Co. (AT & T) who advertise that their long distance rates are lower than those of AT & T, but do not reveal their practice of charging for uncompleted calls. AT & T does not charge for such calls. In order to frame the issues clearly, it is necessary to set forth the procedural history of the litigation in some detail.

## I.

Ten separate class actions were filed in various district courts setting forth the same general claims. The Judicial Panel on Multidistrict Litigation transferred these cases to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1407(a). Thereafter, as more complaints were filed, the Judicial Panel continued to transfer them to the district court. Seymour Lazar, a plaintiff in one of the transferred cases, moved to remand his case to state court, asserting that he had raised only state law claims. The district court denied the motion, finding that plaintiff's state law claims were preempted by the Federal Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.*, and that this federal statute provided the exclusive remedy for the defendants' allegedly unlawful actions. The district court held that the defendants' alleged conduct was within the scope of activities governed by 47 U.S.C. § 201(b) which provides in part: "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful...." *Lazar v. MCI Communications, Inc.*, 598 F.Supp. 951 (E.D.Mich.1984). The district court has

subsequently denied similar remand motions brought by other plaintiffs in the consolidated proceedings. See *Solomon v. MCI Communications,* 640 F.Supp. 997 (E.D.Mich.1986); *Sandler v. GTE Sprint,* 622 F.Supp. 282 (E.D.Mich.1985).

After the *Lazar* decision, all of the plaintiffs filed a single amended consolidated complaint.[1] Count I of the consolidated complaint alleged that defendants' failure to disclose their billing policy was an "unreasonable" practice in violation of 47 U.S.C. § 201(b). Count III alleged that the same conduct was also violative of 47 U.S.C. § 207, which provides:

> Recovery of damages. Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

The district court ruled that this section merely outlines the concurrent jurisdiction of the federal district courts and the Federal Communications Commission (FCC) to hear claims alleging violations of other provisions of the Act and that section 207 does not, in and of itself, create a separate, independent cause of action. The plaintiffs have not appealed from this ruling. Counts II, IV, and V presented federal common law claims of fraud, breach of contract, and conversion. Finally, in Count VI of the consolidated complaint, plaintiffs alleged that defendants' conduct also violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, *et seq.*

In granting the defendants' motion to dismiss, the district court found that it would be more appropriate for the FCC to make the initial determination regarding the reasonableness of the defendants' practices under 47 U.S.C. § 201(b). Therefore, relying on the doctrine of primary jurisdiction, the district court dismissed this statutory claim and referred the issue to the FCC. *In re Long Distance Telecommunications Litigation,* 612 F.Supp. 892 (E.D. Mich.1985) (*Long Distance Litigation*). The plaintiffs' federal common law claims were dismissed because the court found that it was unnecessary to imply such claims where there was already a statute which was broad enough to address the issues and provide plaintiffs with the requested relief. Finally, with respect to plaintiffs' RICO claims, the court found that a determination of "unreasonableness" under § 201(b) was a necessary prerequisite to establishing the existence of "crime," "injury," or "liability" as required to state a RICO claim.

## II.

We consider the appeal in No. 85–1684 first. In dismissing the consolidated complaint the district court invoked the doctrine of primary jurisdiction. This doctrine is based upon a principle described by Justice Frankfurter in *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952), as follows:

> The Court thus applied a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by

---

**1.** *Kaplan v. ITT–U.S. Transmission Systems, Inc.,* was transferred to the district court after the consolidated complaint was filed, and therefore Kaplan did not join in it. However, the Communications Act and the common law claims alleged in Kaplan's original complaint are identical, in all respects relevant to this appeal, to the claims made in the consolidated complaint.

Similarly, the complaint in *Lee v. Western Union Telegraph Co.,* which the district court dismissed on June 2, 1986 together with four other "tag-along" actions, is identical to the consolidated complaint. Plaintiffs in *Lee* appealed the order of dismissal, and this court consolidated that appeal as No. 86–1599 with the earlier appeal in No. 85–1684 from dismissal of the consolidated complaint.

specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

The Supreme Court explained the difference between exhaustion and primary jurisdiction in *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63–65, 77 S.Ct. 161, 165–66, 1 L.Ed.2d 126 (1956):

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433 [60 S.Ct. 325, 331, 84 L.Ed. 361 (1940)].

\* \* \* \* \* \*

The doctrine of primary jurisdiction thus does "more than prescribe the mere procedural time table of the lawsuit. It is a doctrine allocating the lawmaking power over certain aspects" of commercial relations. "It transfers from court to agen-

cy the power to determine" some of the incidents of such relations.

(Footnote omitted).

Justice Harlan, writing for the Court in *Western Pacific*, emphasized the necessity for applying the doctrine of primary jurisdiction on a case-by-case basis, and identified the two principal considerations to be taken into account:

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. See *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 [27 S.Ct. 350, 51 L.Ed. 553 (1907)]. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. See *Far East Conference v. United States*, 342 U.S. 570 [72 S.Ct. 492, 96 L.Ed. 576 (1952)].

*Id.* at 64, 77 S.Ct. at 165.

The district court concluded that the claims of Count I, alleging that the defendants' charges and practices are unjust and unreasonable within the meaning of section 201(b) of the Communications Act, are within the primary jurisdiction of the FCC. In reaching this conclusion the district court considered the pervasive nature of the FCC's regulatory authority over the communications industry and the agency's long involvement in the process by which the defendants and other competitors of AT & T gained access to the long distance telephone market, The court specifically found that the question of reasonableness of the defendants' practices was well within the FCC's area of expertise and that "[t]here is a genuine danger of inconsistent adjudications where, as here, numerous lawsuits have been brought by individuals and class action plaintiffs in different state

and federal courts across the country." *Long Distance Litigation*, 612 F.Supp. at 898.

■ The district court was clearly correct in concluding that the claims based on section 201(b) of the Communications Act are within the primary jurisdiction of the FCC. Section 201(b) speaks in terms of reasonableness, and the very charge of Count I is that the defendants engaged in unreasonable practices. This is a determination that "Congress has placed squarely in the hands of the [FCC]." *Consolidated Rail Corp. v. National Ass'n of Recycling Industries, Inc.*, 449 U.S. 609, 612, 101 S.Ct. 775, 777, 66 L.Ed.2d 776 (1981) (citation omitted).

The plaintiffs argue that *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), requires reversal of the district court's application of the doctrine of primary jurisdiction in the present case. We disagree. In *Nader* the Supreme Court refused to require that a state law claim of misrepresentation be referred to the Civil Aeronautics Board (CAB). The plaintiff in *Nader* was "bumped" from an Allegheny flight, although he had a ticket and a confirmed reservation. The bumping resulted from the airline's practice of deliberately overbooking its flights. Nader sued for fraudulent misrepresentation based on the airline's failure to advise him in advance of its deliberate overbooking practice. The district court awarded damages on this claim, *Nader v. Allegheny Airlines, Inc.* 365 F.Supp. 128 (D.D.C.1973), but the court of appeals reversed, holding that a determination by the Civil Aeronautics Board (CAB) that a practice is not deceptive within the meaning of the Federal Aviation Act of 1958 would, as a matter of law, preclude a common law tort action seeking damages for injuries caused by that practice. *Nader v. Allegheny Airlines, Inc.* 512 F.2d 527, 543 (D.C.Cir.1975). The court of appeals then applied the doctrine of primary jurisdiction to hold that the district court should have stayed the common law tort action pending reference to the CAB for a determination of whether the challenged practice of failing to disclose the practice of overbooking was "deceptive." The court of appeals also found that the "savings clause" of the Aviation Act did not apply.

In reversing, the Supreme Court held that a violation of the Aviation Act's prohibition against deceptive practices "is not coextensive with a breach of duty under the common law." 426 U.S. at 302, 96 S.Ct. at 1986. While that provision gives the CAB a powerful weapon against practices that deceive the public, "it does not represent the only, or best, response to all challenged carrier actions that result in private wrongs." *Id.* at 303, 96 S.Ct. at 1986.

The Court discussed the origin and purpose of the doctrine of primary jurisdiction which requires district courts to refer specific issues properly within their jurisdiction to administrative agencies for initial determination in order to promote uniformity in the regulation of businesses entrusted to such agencies and to obtain the benefit of the expertise and experience of the agencies. Emphasizing that the tort claim sought damages for the airline's failure to disclose its practice of overbooking rather than the reasonableness of the practice of overbooking itself, the Court stated that the case did not involve considerations of uniformity in regulation or technical expertise. Thus, the court of appeals erred in ordering the fraudulent misrepresentation claim stayed under the doctrine of primary jurisdiction. That claim was within the jurisdiction of the district court and referral to the CAB was not required. "The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case." *Id.* at 305–06, 96 S.Ct. at 1987–88 (footnote omitted).

*Nader* was not a case where there was a direct conflict between an agency's authority and that of a court adjudicating common law claims. In holding that the doctrine of primary jurisdiction did not apply, the Court pointed out that it was not "called upon to substitute its judgment for the

agency's on the reasonableness of a rate— or, indeed, on the reasonableness of any carrier practice." *Id.* at 299–300, 96 S.Ct. at 1985. Conversely Count I of the consolidated complaint in the present case did call on the district court to determine the reasonableness of the defendants' practices, and raised an issue properly referred to the FCC in the first instance. We distinguished *Nader* on identical grounds in *Detroit, Toledo & Ironton Railroad Co. v. Consolidated Rail Corp.,* 727 F.2d 1391, 1395–96 (6th Cir.1984).

The plaintiffs also maintain that there is no reason to refer the claims under section 201(b) to the FCC because that agency has already applied its expertise to the question of the reasonableness of the defendants' notification practices in *Bill Correctors v. U.S. Transmission Systems, Inc.* FCC Docket No. E–84–6 (Nov. 5, 1984). A careful reading of the decision in *Bill Correctors* does not support the plaintiffs' position. The issue there was whether the defendants were required to disclose their practices in tariffs filed with the FCC pursuant to section 203 of the Communications Act; it did not involve a specific claim of unreasonableness under section 201(b). The bulk of the *Bill Correctors* decision deals with the fact that the defendants lack "answer supervision" technology which would permit them to detect uncompleted calls. The decision requires them to advise the FCC within thirty days "of the notification method used or to be used to alert customers of the methods it employs to guard against erroneous overcharges." (Slip Op. at 7).

■ Finally, the plaintiffs contend that if primary jurisdiction required referral of the section 201(b) claim to the FCC, the district court erred in dismissing Count I rather than staying action on it until the agency has considered the claim. We agree. In *Far East Conference* the Supreme Court noted that uniformity and consistency in regulation can be secured by *preliminary* resort to the proper agency, and that this is a "mode of accommodating the complementary roles of courts and administrative agencies." 342 U.S. at 575, 72

S.Ct. at 494. Similarly, in *Western Pacific* the Court described the operation of the doctrine of primary jurisdiction as a procedure where "the judicial process is *suspended* pending referral of such issues to the administrative body for its views." 352 U.S. at 63–64, 77 S.Ct. at 165 (emphasis added) (citation omitted).

We note that some of the plaintiffs joined in a complaint before the FCC following dismissal of the consolidated complaint. The defendants argue that the plaintiffs cannot pursue this appeal while simultaneously seeking the same relief from the FCC. However, the district court's dismissing the action rather than staying it created a quandary for the plaintiffs. In dismissing on primary jurisdiction grounds, rather than staying judicial proceedings, the district court order could be construed as requiring the plaintiffs to raise the section 201(b) claim with the FCC. At any rate, the FCC dismissed that complaint in *Certified Collateral Corp. v. Allnet Communication Services, Inc.,* FCC Docket No. 86–063 (April 14, 1987), for lack of specificity. The FCC also noted that its rules do not provide for class actions, (Slip Op. at 3) thus indicating that the district court may be required to deal further at least with remedy issues after the FCC has made a definitive determination of the reasonableness issue. Upon remand the district court will stay further proceedings on Count I pending action by the FCC pursuant to an order of referral.

### III.

In separate opinions the district court held that both the state and federal common law claims were preempted by the comprehensive regulatory scheme of the Communications Act. *Lazar,* 598 F.Supp. at 954; *Long Distance Litigation,* 612 F.Supp. at 899–900. The plaintiffs assert that the district court erred in both rulings, and we consider them separately.

### A.

■ The state law claims in the original *Lazar, Solomon and Sandler* complaints were not repeated in the consolidated complaint. The district court's conclusion that

the state law claims were preempted by the Communications Act was the basis for denial of motions to remand, not dismissals. *Lazar,* supra. The denial of a motion to remand is not a final, appealable order under 28 U.S.C. § 1291. See *Rohrer, Hibler & Replogle, Inc. v. Perkins,* 728 F.2d 860, 861 (7th Cir.), *cert. denied,* 469 U.S. 890, 105 S.Ct. 265, 83 L.Ed.2d 201 (1984). Nevertheless, the preemption rulings had the effect of removing the state law claims from the cases. We do not believe plaintiffs abandoned their state law claims by failing to repeat them in the consolidated complaint, which superseded the various separate complaints. Since these claims had been rejected by the court in unappealable orders, the first opportunity to test the correctness of the district court's preemption ruling came following dismissal of the entire action. We conclude that the question of whether the state law claims were preempted by the Communications Act is properly before us.

### B.

The district court cited the need for nationwide uniformity in regulation of the telecommunications industry in concluding that the state law claims were preempted. *Lazar,* 598 F.Supp. at 953–54. Although the district court noted that the plaintiffs relied on *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), it did not discuss or attempt to distinguish that decision, but appeared to follow an earlier court of appeals decision, *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486 (2d Cir.1968). 598 F.Supp. at 953. The district court also held that the "savings clause" in the Communications Act, 47 U.S.C. § 414, is inapplicable since the complaint "effectively challenges practices expressly and exclusively regulated ... in 47 U.S.C. § 201." *Id.* at 954. Section 414 provides:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

We believe a closer examination of *Nader* is required. The court of appeals in *Nader* held that the Aviation Act did not preempt all common law remedies for misrepresentational torts. *Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527, 543 (D.C. Cir.1975). This holding was not an issue before the Supreme Court. The court of appeals did hold that the particular misrepresentational tort alleged by the plaintiff arose from conduct that is regulated by the Aviation Act, and the case was stayed until the Civil Aeronautics Board could determine whether Allegheny's reservation practices were deceptive. *Id.* at 544. Thus, *Nader* was actually decided on primary jurisdiction grounds, not on preemption grounds.

The Supreme Court also decided *Nader* on primary jurisdiction grounds, but reversed the court of appeals upon concluding it was not a proper case for application of that doctrine. 426 U.S. at 304–07, 96 S.Ct. at 1987–88. However, before reaching its conclusion that the state law claims need not be referred to the administrative agency for preliminary consideration, the Supreme Court held, at least implicitly, that the claims were not preempted by federal law. In doing so, the Court distinguished *Texas & Pacific Railroad Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), the seminal case on preemption. In *Abilene* the remedy sought by the plaintiff placed the court's common law authority and the agency's ratemaking power into direct conflict. In *Nader,* on the other hand, the Court found no "irreconcilable conflict between the statutory scheme and the persistence of common-law remedies." 426 U.S. at 299, 96 S.Ct. at 1984.

We believe the district court erred in holding that the state law claims for fraud and deceit, based on the defendants' failure to notify customers of the practice of charging for uncompleted calls, were preempted by the Communications Act. These claims, unlike those based on section 201 of the Act, do not require agency expertise for their treatment and are "within the conventional experience of judges." *Far East Conference,* 342 U.S. at 574, 72 S.Ct. at 494. The claims in this case are more nearly like those in *Nader* than the

ones considered by the court of appeals in *Ivy Broadcasting Co.* There the complaint charged negligence and breach of contract in the rendition of interstate telephone service. The *Ivy* court held that the claims were preempted by federal common law even though they did not charge violations of specific provisions of the Communications Act. However, the alleged torts involved the level of service provided by the defendants, not a failure to notify customers of a practice. Finding that there was an implied congressional purpose to require uniformity and equality of service as well as of rates by communications companies, the court concluded that state law could not apply. If the state law claims in the present case related to rates or service rather than the failure to disclose, *Ivy* would be more persuasive. See *Kellerman v. MCI Telecommunications Corp.* 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, *cert. denied,* — U.S. —, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), where the Supreme Court of Illinois reached the same conclusions as we do concerning preemption of state law claims in the light of *Nader.*

We also conclude that the district court incorrectly found that the savings clause of the Communications Act does not apply to the state law claims. The language in 47 U.S.C. § 414 is almost identical to that of 49 U.S.C. § 1506, the savings clause of the Aviation Act. The Supreme Court in *Nader* found that the common-law action for fraudulent misrepresentation and the Aviation Act, not being " 'absolutely inconsistent,' " could coexist, "as contemplated by § 1106 [of the Aviation Act, 49 U.S.C. § 1506]." 426 U.S. at 300, 96 S.Ct. at 1985. The same reasoning applies in the present case and we believe the savings clause of the Communications Act does give the plaintiffs the option of pursuing their remedy at common law. The district court is free to stay proceedings on the common law claims pending determination by the FCC of the reasonableness of the defendants' failure to disclose their billing practices.

## C.

■ Since we have held that the plaintiffs may pursue their state common law claims in the district court, there is no need to fashion federal common law or to consider whether such a body of law would be inconsistent with the regulatory scheme of the Communications Act. The court in *Ivy Broadcasting* found it necessary to apply federal common law for two reasons. It held that the Communications Act did not deal with the particular claims of negligence and breach of contract asserted by the plaintiffs and that state law actions were preempted by federal law in all matters related to "the duties, charges and liabilities" of telecommunications companies. 391 F.2d at 486–87. We have held that *Nader* preserves state common law actions against regulated companies where the activity in question is a failure to inform customers of a practice, not an attack on the practice itself. Thus, the plaintiffs have an avenue for judicial determination of these issues under their state law claims, and there is no need to resort to federal common law. Dismissal of Counts II, IV and V is affirmed.

## IV.

■ The district court dismissed Count VI, the RICO Count, on the assumption that the FCC's determination of the reasonableness of the defendants' conduct would establish whether the RICO requirements of "injury," "crime" or "liability" were satisfied. 612 F.Supp. at 900. Our decision that the state common law claims of fraud and deceit are not preempted undercuts this reasoning. The plaintiffs are not confined to proving illegal acts by the defendants in their failure to act reasonably within the meaning of section 201(b). With the reinstatement of the *Lazar* claims, the RICO allegations are sufficient to survive a motion to dismiss. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The order dismissing Count VI is vacated. The district court is free to stay proceedings on this count pending determination by the FCC of the reasonableness of the defendants' practice of failing to advise their customers of overcharging, since this determination may bear on the ultimate decision of the RICO claims.

## V.

In No. 86–1599, *Lee v. Western Union Telegraph Co.*, the plaintiffs appeal from dismissal of their case which was transferred from the Northern District of California to the Eastern District of Michigan as a "tag-along" action. The Lees' original complaint was dismissed by the district court in California on primary jurisdiction grounds. While the plaintiffs' appeal was pending in the Ninth Circuit, the FCC decided *Bill Correctors*. The Lees construed the decision in *Bill Correctors* as answering the questions referred to the FCC by the district court, and dismissed their appeal. They then filed a new complaint in the Northern District of California. This was the action that was transferred to the Eastern District of Michigan. As noted earlier, this complaint is identical in its operative features with the consolidated complaint.

The district court applied its earlier primary jurisdiction and preemption rulings, made in connection with the consolidated complaint, to the Lees' transferred complaint. In addition the district court held that the Lee action was subject to dismissal under principles of *res judicata*. The Lees contend that *res judicata* does not apply because dismissal of their first action on primary jurisdiction grounds was a ruling of law, and that no fact issues were involved.

The Lees' claim should be treated as the others. Rather than dismissing it, the district court should have stayed further proceedings pending completion of the FCC proceedings. Application of issue preclusion *res judicata* required this treatment rather than dismissal.

 The original dismissal of the Lees' complaint by the district court in California, while "valid and final, ... does not bar another action by the plaintiff on the same claim." *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 844 (9th Cir.1979) (citation omitted). When a plaintiff seeks to refile a claim following a dismissal on primary jurisdiction grounds, the "issue preclusion" aspect of *res judicata* controls.

Issue preclusion, unlike bar, forecloses litigation only of those issues of fact or law that were actually litigated and necessarily decided by a valid and final judgment between the parties, whether on the same or a different claim. *Lawlor v. National Screen Service*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 24 L.Ed. 195 (1876); *Russell v. Place*, 94 U.S. (4 Otto) 606, 24 L.Ed. 214 (1876); Restatement 2d, Judgments, § 68 (T.D. No. 1 1973).

*Id.* at 845 (footnote omitted).

The order of dismissal in No. 86–1599 is vacated and the case is remanded to the district court with directions to stay further proceedings until the FCC has determined the issues raised in the Lees' case. The district court may join the Lees' case with those included in the consolidated complaints.

We neither express nor intimate any opinion as to the merits of any of the plaintiffs' claims, as our consideration of these appeals is limited to procedural issues.

The judgment of the district court is affirmed in part, vacated in part and reversed in part, and both cases are remanded for further proceedings consistent with this opinion. No costs allowed on appeal.