Kenneth KIEFER, et al., Plaintiffs,

v.

PAGING NETWORK, INC.,
et al., Defendants.

No. 98–74242.

United States District Court,
E.D. Michigan,
Southern Division.

May 3, 1999.

Michael J. Hanzman, Mark J. Heise, Hanzman, Criden, Chaykin, Ponce & Heise, P.A., Miami, FL, David Foster, Farmington Hills, MI, Harold Fried, Southfield, MI, for Plaintiffs.

Patrick Rode, Meyer, Kirk, Snyder & Safford, PLLC, Bloomfield Hills, MI, Mark Herrmann, Geoffrey J. Ritts, Dennis A. Devine, Jones, Day, Reavis & Pogue, Cleveland, OH, for Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PAGING NETWORK OF MICHIGAN, INC.'S MOTION TO DISMISS AMENDED COMPLAINT; REFERRING PLAINTIFF'S COMMUNICATIONS ACT CLAIM TO THE FCC; AND STAYING THIS ACTION PENDING THE FCC'S RESOLUTION OF THE REFERRED CLAIM**

EDMUNDS, District Judge.

Count III of Plaintiff's First Amended Class Action Complaint alleges that Defendant's conduct was unjust and unreasonable and thus unlawful pursuant to Section 201(b) of the Communications Act, 47 U.S.C. § 201(b). Counts I and II, asserting state common law claims for "unlawful liquidated damages" and "unjust enrichment," likewise contend that Defendant's uniform $5.00 late payment charge is unjust and unreasonable.

This matter comes before the Court on Defendant Paging Network of Michigan, Inc.'s motion to dismiss Plaintiff's Complaint without prejudice arguing that, under the doctrine of primary jurisdiction, this Court should refer Plaintiff's complaint regarding the reasonableness of Defendant's $5.00 late payment charge to the Federal Communications Commission (FCC), the administrative agency created by Congress to make determinations whether such charges are reasonable as required under Section 201(b). In the alternative, Defendant moves, pursuant to Fed.R.Civ.P. 12(b)(6), that Counts I and II of Plaintiff's complaint be dismissed with prejudice because they fail to state a claim upon which relief can be granted.

Defendant's motion is GRANTED IN PART and DENIED IN PART. The doctrine of primary jurisdiction is properly invoked in this case. This Court GRANTS Defendant's request that Plaintiff's Section 201(b) claims be referred to the FCC so that the FCC may determine whether Defendant's practice of charging a standardized late payment fee violates federal law.

The Court DENIES Defendant's request that Plaintiff's action be dismissed without prejudice. The Court finds that it is in the parties' best interest to STAY the district court proceedings while the case is referred to the FCC. Doing so will allow the FCC to completely consider the issues involved and will prevent this Court from interfering with or contradicting any FCC rulings. It will likewise allow the Court to address remedy issues left open "after the FCC has made a definitive determination of the reasonableness issue." *In re Long Distance Telecomm. Litigation,* 831 F.2d 627, 632 (6th Cir.1987) (where the court concluded that a stay rather than a dismissal was proper in part because the FCC's rules do not provide for class actions).

## I. Facts

Plaintiff Kenneth Kiefer entered into a contract to obtain electronic paging services from Defendant Paging Network of Michigan. Am. Compl. at ¶ 98. Paging Network relies on satellite facilities to route paging calls to transmitters around the country and thus to provide wide area, regional and nationwide paging service. It provides paging services under licenses granted to it under Section 301 of the Communications Act of 1934, as amended, 47 U.S.C. § 301. The FCC regulates the issuing and operation of such licenses, including the provision of paging services. *See, e.g.,* 47 U.S.C. § 152(a) (FCC regulates "all interstate and foreign communication by wire or radio"); 47 C.F.R. §§ 22.551, 22.559.

Kiefer receives monthly bills for paging services provided by Paging Network. The monthly bill totals approximately $19.95, and each bill contains a reminder indicating that a late charge of $5 will be assessed if payment is not received by the specified due date. Am. Compl. at ¶ 99, 101. After failing to timely pay his paging bill, Kiefer was charged and paid a $5.00 late fee. Am. Compl. at ¶ 104.

Kiefer has now filed a putative class action suit seeking recovery of the late fee charges that he, and others allegedly similarly situated, have incurred.[1]  Paging Network is named as a Defendant along with its parent holding company, Paging Network, Inc., and 70 other allegedly affiliated companies that purportedly do business in states other than Michigan.  Paging Network is the only entity properly served to date.

Kiefer's suit alleges that the uniform $5.00 late fee for monthly services of approximately $19.95 is an unreasonably high penalty complicated by an unreasonable time period for payment.  His amended complaint alleges that the uniform $5.00 late fee: (1) is punitive, excessive, bears no relation to Defendant's actual losses due to late payments, and thus constitutes an unlawful liquidated damage amount (Count I); (2) unjustly enriches and confers a benefit on Defendants which far exceeds the actual costs associated with collecting late payments for paging services (Count II); and (3) is unjust and unreasonable and thus unlawful under Section 210(b) of the Communications Act, 47 U.S.C. § 201, which requires that all charges be just and reasonable (Count III).

Defendant Paging Network brings this motion to dismiss arguing that this Court should refer Kiefer's complaints regarding the reasonableness of the $5.00 late fee charge to the FCC because Congress established that agency to "execute and enforce" the provisions of the Communications Act, and charged the FCC with exclusive responsibility for regulating and enforcing rates for interstate communications.  This Court agrees that Kiefer's claims should be referred to the FCC but finds that a stay, rather than a dismissal without prejudice, better serves the parties interests here.

## II.  Analysis

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).  The doctrine is properly invoked when enforcement of a claim in court would require resolution of issues that have already been placed within the special competence of an administrative body.  In a frequently quoted passage, Justice Frankfurter described the following circumstances where the doctrine is to be applied.

> *[I]n* cases raising issues of fact not within the conventional experience of judges or *cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over* ....  Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 96 L.Ed. 576 (1952) (emphasis added).

The doctrine is applied on a case-by-case basis, and courts consider several factors.  First, courts examine "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation."  *United States v. Western Pac. R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).  Second, courts determine if uniformity is desirable and could be obtained through

---

1.  This Court has not yet evaluated whether a class action is appropriate in this matter.

Fed.R.Civ.P. 23(c).

administrative review. *Id.* (citing *Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907)). Finally, courts consider the "expert and specialized knowledge of the agencies involved . . . ." *Western Pac.*, 352 U.S. at 64, 77 S.Ct. 161 (citing *Far East Conference*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952)).

■ Applying these factors here, the Court finds that the doctrine of primary jurisdiction is applicable. Regulation of paging services is a matter that Congress has placed within the special competence of the FCC. 47 U.S.C. § 151 (Congress created the FCC and further provided that it "shall execute and enforce the provisions of this chapter"). If this Court were to consider the reasonableness of Defendants' challenged billing practice, issues related to the regulation of these services would necessarily be involved. Allowing the FCC to first consider whether Defendants' late payment charges and billing practices are "reasonable" as required under Section 201(b) of the Communications Act is consistent with the purposes of the primary jurisdiction doctrine. Congress has created this agency to regulate the subject matter at issue here, and the FCC's expertise in determining whether charges or billing practices are "reasonable" and "just" should not be passed over. The FCC has specialized knowledge of the telecommunications systems involved in this matter, has gained insight through experience, and that knowledge should lead to a better understanding of the nature of this dispute. Referral of this matter to the FCC will also promote uniformity and consistency in its regulation of the telecommunications industry.

In a case similar to this one, the Sixth Circuit concluded that the doctrine of primary jurisdiction was properly invoked when the plaintiffs asserted a Section 201(b) claim alleging that the defendants' billing practices were unreasonable. *See*

*In re Long Distance Telecomm. Litigation*, 831 F.2d 627 (6th Cir.1987). The plaintiffs in *Long Distance* were customers of the defendants, several large long distance carriers. Plaintiffs' complaint, similar to the complaint filed here, alleged federal and state law claims. It alleged that the defendants' practice of charging for uncompleted calls, ring time, and hold time violated the Communications Act and constituted breach of contract, fraud and conversion. The district court dismissed the case and referred it to the FCC based on the doctrine of primary jurisdiction. The Sixth Circuit affirmed in part, finding that the FCC had primary jurisdiction and observing that:

> The district court was clearly correct in concluding that the claims based on section 201(b) of the Communications Act are within the primary jurisdiction of the FCC. Section 201(b) speaks in terms of reasonableness, and the very charge of Count I is that the defendants engaged in unreasonableness practices. That is a determination that "Congress has placed squarely in the hands of the [FCC]."

*Id.* at 631 (quoting *Consolidated Rail Corp. v. Nat'l Ass'n of Recycling Industries, Inc.*, 449 U.S. 609, 612, 101 S.Ct. 775, 66 L.Ed.2d 776 (1981)). The court went on to hold that the district court should have stayed the case instead of dismissing it. *Long Distance*, 831 F.2d at 632.

Plaintiff here likewise charges in Count III that Defendants engaged in unreasonable practices in violation of Section 201(b) of the Communications Act.[2] Accordingly, Plaintiff's claims based on Section 201(b), which are within the primary jurisdiction of the FCC, require a similar referral to the FCC. This Court is not persuaded by Plaintiff's arguments that: (1) only complaints concerning the reasonableness of tariffed rates warrant application of the primary jurisdiction doctrine; (2) Defendant's uniform late payment charge should

---

**2.** Specifically, Keifer alleges that Paging Network violated the Act by imposing an "unjust, unreasonable, and unlawful charge on Plain-

tiff and the class members." Am. Compl. at ¶ 120.

be construed as a liquidated damage "term and condition" of the parties' paging service contract rather than as a "charge or practice" whose reasonableness is to be assessed under Section 201(b) of the Act; and (3) the reasonableness of Defendant's billing practices are within the competence of this Court.

Plaintiff's arguments ignore the fact that: (1) paging services are regulated by the FCC; (2) Section 201(b) of the Communications Act requires that all charges and practices for communication services covered under the Act "shall be just and reasonable" and does not limit the "reasonableness" inquiry to tariffed rates; (3) Plaintiff's complaint asserts Section 201(b) "reasonableness" claims; and (4) as observed by the Sixth Circuit in *Long Distance*, Congress has placed Section 201(b) "reasonableness" determinations "squarely in the hands of the FCC." 831 F.2d at 631. The late payment charge at issue here is part of the overall rate structure for paging services; not merely a "term and condition" of the parties' service contract. Plaintiff's argument ignores the fact that a service provider's overall rate structure can take several forms; i.e., it can spread the costs of untimely payments among its customers by charging everyone an increased rate, or it can include in its overall rate structure a separate charge for untimely payments that are to be imposed solely on those customers who fail to timely pay their bills. Defendant chose the latter of these two options to be included in its overall rate structure.

Regardless of the semantic label Plaintiff uses to dress his Section 201(b) claims, he cannot disguise the fact that they question the reasonableness of Defendant's uniform late payment charges, and the Sixth Circuit has determined that such questions should be determined, in the first instance, by the FCC. This Court is convinced that

primary jurisdiction analysis depends not on the presence or absence of a tariff but rather depends on the presence or absence of the reasons for the doctrine's existence; i.e., an agency has been created by Congress that has expertise and experience in the subject matter and there is a need for uniformity in the regulated industry. *See Long Distance*, 831 F.2d at 631–32; *Alltel Tennessee, Inc. v. Tennessee Pub. Serv. Comm'n*, 913 F.2d 305, 309–310 (6th Cir. 1990). The decisions Plaintiff relies upon fail to support a contrary position.

Plaintiff's argument that similar class action suits have resulted in final judgments without referral to the FCC is disingenuous. *See Burch, et al. v. United Cable Television of Baltimore Ltd. Partnerships*, Case No. 95311038/CL20487 (Cir. Ct. Bal. City Sept. 16, 1997); *Bassin, et al. v. District Cablevision Ltd. Partnership*, C.A. No. 94–011754 (Sup.Ct. D.C. April 27, 1997). These class action suits raised state law claims, not claims under Section 201(b) of the Communications Act. *Burch* further observed, consistent with an April 7, 1993 FCC Report and Order, that state consumer protection and related claims regarding late fees in the cable industry are not preempted by federal law. Thus, the FCC apparently had the opportunity to address the preemption issue before the trial court rendered its decision in *Burch*. A similar opportunity for FCC consideration of Plaintiff's Section 201(b) claim would prove beneficial here.

The FCC has not yet addressed the issue, and its determination as to the "reasonableness" of Defendant's uniform $5.00 late payment charge will necessarily guide similar suits against other telecommunication providers.[3] It will likewise guide any decisions as to Plaintiff's remaining state law claims which similarly allege that the late payment charge is unjust and unreasonable.[4] Thus, use of the primary juris-

---

3. A decision favoring Plaintiff's Section 201(b) claims could logically be applied to other telecommunication providers subject to FCC regulation under the Communications Act.

4. In light of the Court's decision to invoke the doctrine of primary jurisdiction, to refer Plaintiff's Section 201(b) claims to the FCC, and to stay further proceeding pending a final determination by the FCC, it is not necessary for this Court to address Defendant's remain-

diction doctrine and referral to the FCC will avoid disparate or conflicting requirements for telecommunication providers. It will promote uniformity "which occurs when a specialized agency decides certain administrative questions." *Alltel Tennessee*, 913 F.2d at 309.

As the Sixth Circuit observed in *Long Distance*, the danger of inconsistent adjudications concerning the reasonableness of charges and practices covered under Section 201(b) is genuine where "numerous lawsuits have been brought by individuals and class action plaintiffs in different states and federal courts across the country." *Long Distance*, 831 F.2d at 630–31. The same rationale applies here. To allow Plaintiff's class action suit to go forward would foster similar lawsuits in different states and federal courts across the country thus creating the dangers the primary jurisdiction doctrine is designed to avert. Application of the doctrine here is appropriate because the reasons for its existence are present. *See Alltel Tennessee*, 913 F.2d at 309.

Additional support for invoking the primary jurisdiction doctrine can be gleaned from the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* teaches that courts must uphold reasonable agency construction of ambiguous language in an agency-administered statute. In this case, the central issue is whether Paging Network's uniform late payment charge violates the Communication Act's prohibition against "unreasonable" and "unjust" charges and practices. 47 U.S.C. § 201(b). If it is determined that this statutory language is capable of more than one reasonable interpretation, the courts will be required to defer to the FCC's interpretation of what constitutes an "unreasonable" or "unjust" late payment charge in the telecommunications industry. *See Chevron*, 467 U.S. at 843–45,

865–66, 104 S.Ct. 2778. The FCC has not yet passed on the "reasonableness" issue presented here, and referral under the primary jurisdiction doctrine will allow it to interpret Section 201(b) in this context and provide the guidance necessary for a uniform and nationwide policy regarding the practice of charging standardized late payment fees in FCC regulated industries.

■ Having decided that it is proper to invoke the primary jurisdiction doctrine and to refer Plaintiff's Section 201(b) claims to the FCC, this Court must now decide whether to dismiss Plaintiff's action without prejudice or to stay further proceedings until after the FCC has made a definitive determination of the reasonableness issue. The Court concludes that it is in the parties' best interest to stay the district court proceedings while the case is referred to the FCC. Doing so will allow the FCC to completely consider the issues involved and will prevent this Court from interfering with or contradicting any FCC rulings. It will likewise allow the Court to address remedy issues left open "after the FCC has made a definitive determination of the reasonableness issue." *Long Distance*, 831 F.2d at 632 (where the court concluded that a stay rather than a dismissal was proper in part because FCC rules do not provide for class actions).

### III.  Conclusion

For the foregoing reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. The Court **GRANTS** Defendant's request to invoke the doctrine of primary jurisdiction, but **DENIES** its request to dismiss Plaintiff's action without prejudice. Under the doctrine of primary jurisdiction, this Court **REFERS** Plaintiff's claims under the Communications Act to the FCC, and **STAYS** the case pending an FCC determination of the reasonableness of Defen-

ing arguments concerning the dismissal of Counts I and II of Plaintiff's amended com-

plaint.

dant's practice of charging a uniform late payment fee.

SO ORDERED.