Kenneth RICHARDSON; Norman J. Trapp, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

Nos. 90–35423, 90–35424.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1991.

Decided Aug. 30, 1991.

---

David E. Williams, Critchlow, Williams & Schuster, Richland, Wash., for plaintiff-appellant Richardson.

Gregg L. Tinker, Longfelder, Tinker, Kidman & Flora, Inc., P.S., Seattle, Wash., for plaintiff-appellant Trapp.

Thomas O. Rice, Asst. U.S. Atty., Spokane, Wash., for defendant-appellee.

Before WIGGINS, BRUNETTI and T.G. NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

This case involves a suit against the United States under the Federal Tort Claims Act for injuries caused when lightning simultaneously struck a power line and the plaintiffs who were carrying a metal irrigation pipe underneath the power line.[1] In two prior appeals before this court we found the district court applied an incorrect standard of care to determine negligence and remanded for a new trial. *See Richardson v. United States*, 645 F.2d 731, 735 (9th Cir.1981) (*"Richardson I"*); *Richardson v. United States*, 841 F.2d 993, 995 (9th Cir.1988) (*"Richardson II"*). The previous appeals did not address the question of the applicability of the discretionary function exception to the Federal Tort Claims Act. After this court's second remand, the district court found the discretionary function exception applied and dis-

---

**1.** "This phenomenon of electricity travelling through the air from a high-voltage power line to the ground is known as a 'midpoint flash carryover' or a 'midpoint flashover.'" *Richardson v. United States,* 841 F.2d 993, 995 n. 1 (9th Cir.1988).

missed the case for lack of subject matter jurisdiction. We affirm.

## I. *Facts and Proceedings Below.*

The relevant facts are not disputed. The following is taken from *Richardson II:*

> On May 10, 1975, plaintiffs Kenneth Richardson and Norman Trapp were moving aluminum irrigation pipes on the farm that Trapp was renting. Suspended above one part of the farm were three power transmission lines owned and operated by [Bonneville Power Administration ("BPA")]. At the point where the plaintiffs were working, the lines are 30 feet above the ground.
>
> At the time of the accident, plaintiffs were each carrying one end of a 40–foot length of pipe, and Trapp was dragging a 20–foot length of pipe behind him, resting the shorter pipe on the longer one. As they passed underneath the power lines, plaintiffs suddenly received a high-voltage charge of electricity. Both were knocked unconscious and suffered severe and permanent injuries.

841 F.2d at 995. After the second trial in this case, the district court made findings of fact including: "Had the power line been equipped with an overhead ground system a lightning strike would have been diverted and grounded and the injuries would not have occurred." This fact is not disputed. The question of BPA's negligence thus narrowed to the question whether BPA had a duty to install overhead ground wires at the place where the accident occurred. This fact also shapes the issue regarding the discretionary function exception to liability: whether the decision not to install the overhead ground wires at the place where the accident occurred was a discretionary function of BPA.

The plaintiffs filed separate suits against the United States alleging that the injuries were caused by the negligence of BPA, an agent of the United States. Jurisdiction was based on the Federal Tort Claims Act. The government's answer included the claim that the district court lacked jurisdiction over the subject matter of the action. The district court, after a court trial, found the government was not liable for appellant Richardson's injuries and Richardson appealed to this court. This court reversed and remanded for a new trial on the ground that the trial court applied an incorrect standard of care in determining liability. *Richardson I,* 645 F.2d at 735.

Prior to Richardson's second trial, appellant Trapp's suit was consolidated with Richardson's. *Richardson II,* 841 F.2d at 995. The liability issue was then tried again, this time applying the standard of care set forth in *Richardson I.* Prior to ruling, however, a Washington state court decided a case which criticized *Richardson I* and set forth a different applicable standard of care. *See Keegan v. Grant County Pub. Util. Dist.,* 34 Wash.App. 274, 661 P.2d 146, 149–150 & n. 2 (1983). The trial judge in the present case held that he was bound by the law of the case as set forth in *Richardson I* and rejected the standard stated in *Keegan.* This time the trial court found the government liable for the appellants injuries. The trial court also considered and rejected the government's claim that the discretionary function exception applied.[2]

This court reversed stating that the law of the case does not control when "there has been a dispositive intervening decision of an intermediate appellate state court." *Richardson II,* 841 F.2d at 996. The court recognized that the original trial was conducted according to the proper standard

---

**2.** On this issue the court stated,

There are three recent Ninth Circuit decisions in which the court addresses this exception to Federal Tort Claims Act liability. *Mitchell v. United States,* 787 F.2d 466 (9th Cir.1986); *Henderson v. United States,* 784 F.2d 942 (9th Cir.1986); and *Begay v. United States,* 758 [768] F.2d 1059 (9th Cir.1985). Unless I am missing something, these cases seem to create direct conflict on this issue. Assuming that I

am correct, I am satisfied that we have not heard the last word on this issue.

After the judge made these remarks the Supreme Court decided *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), and the Ninth Circuit decided *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018 (9th Cir.1989), and *Summers v. United States,* 905 F.2d 1212 (9th Cir.1990). These cases are discussed in the text below.

but declared that the original judgment could not be reinstated and that a new trial was necessary. *Id.* at 998 n. 9.

On remand, the district court declined to relitigate the factual issues in the case.[3] An evidentiary hearing was held in which the government again argued that the appellants' claims were foreclosed by the discretionary function exception and evidence was heard regarding the government's potential liability under *Keegan* as dictated by *Richardson II.* The district court determined that the discretionary function exception applied in this case because "[t]he decision whether to install overhead ground wires is obviously a design decision, vis-a-vis, construction." The district court held that because the discretionary function applied, the court was without subject matter jurisdiction over the action and ordered the cases dismissed. The appellants' motion for reconsideration was denied on May 4, 1990. An appeal was timely filed on May 21, 1990.

## II. *Analysis.*

### A. The Discretionary Function Exception.

▮ We review the trial court's determination of subject matter jurisdiction under the discretionary function exception de novo. *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1021 (9th Cir.1989). The Federal Tort Claims Act authorizes suits against the United States for damages for personal injuries in situations where a private person would be liable under the law where the act or omission causing the injuries occurred. 28 U.S.C. §§ 1346(b), 2674. Such a suit is not available, however, when the act or omission complained of is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a).

In *Kennewick,* the Kennewick Irrigation District brought suit against the United States for damages arising out of two breaks in Kennewick's main irrigation canal. 880 F.2d at 1019. The breaks were caused by a phenomenon called "piping" whereby water erodes the sides of the canal "causing a gradually increasing channel and eventually a break in the canal." *Id.* at 1020. The canal was designed by the United States Bureau of Reclamation. A United States Magistrate found the Bureau's failure to line the canal with concrete and take other preventative measures in the design of the canal fell outside the discretionary function exception. *Id.* at 1021. This court affirmed in part, and vacated and remanded in part.

The *Kennewick* court reviewed the history of Supreme Court discretionary function decisions including the Court's latest pronouncement in *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). *Berkovitz,* this court stated,

directs us to apply a two-step test for determining whether the discretionary function exception applies. We must "first consider whether the action is a matter of choice for the acting employee.... [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz,* 108 S.Ct. at 1958. If the challenged conduct does involve an element of judgment, our second step is to "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 1959. To be shielded, the judgment must be " 'grounded in social, economic, and political policy.' " *Id., quoting [United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) ],* 467 U.S. [797,] 814, 104 S.Ct. [2755,] 2765 [81 L.Ed.2d 660 (1984) ].

*Kennewick,* 880 F.2d at 1025.

▮ The court analyzed the Bureau of Reclamation's design decision under the

---

**3.** *Richardson II* was amended to state: "We leave to the sound discretion of the experienced trial judge the decision whether under all the circumstances there should be a full trial on

other issues." *Richardson v. United States,* 860 F.2d 357 (9th Cir.1988), amending 841 F.2d 993 (9th Cir.1988).

two step *Berkovitz* test and found first that the decision did not contravene a prescriptive federal statute, regulation or policy. *Id.* at 1027. The court then discussed whether the decision was grounded in social, economic, or political policy. The court held that the Bureau of Reclamation's design decision not to line the canal was within the discretionary function exception because it " 'involve[d] not merely engineering analysis but judgment as to the balancing of many technical,' economic, 'and even social considerations.' " *Id.* at 1029 (quoting *Boyle v. United Technologies Corp.*, 487 U.S. 500, 511, 108 S.Ct. 2510, 2517, 101 L.Ed.2d 442 (1988)). Engineering decisions which involve the application of objective scientific standards without the consideration of economic, political, and social factors, however, fall outside the discretionary function exception. *Id.* at 1030. Also, though the government's decision must have been made in light of the consideration of social, economic, or political policy judgments before the exception will apply, the government need not prove it considered these factors. The discretionary function exception may apply "in the absence of a conscious decision." *Id.* at 1028 (internal quotations omitted).

The appellants in the present case concede that BPA's failure to provide overhead ground wires on its transmission lines did not contravene a prescriptive federal statute, regulation or policy. They argue, however, that the decision is not grounded in social, economic, or political policy and thus does not survive the second step of *Berkovitz.* Appellants argue that the proper authority for resolution of this issue is not *Kennewick*, but rather *Summers v. United States*, 905 F.2d 1212 (9th Cir.1990).

*Summers* involved the failure of the Golden Gate National Recreation Area ("GGNRA") to warn of the dangers of stepping on hot coals in fire rings. The GGNRA is operated by the National Park Service. The Park Service has a sign policy that "limits park signs to the minimum number and size necessary for adequate warning and guidance to the public in order to conserve the scenery of the parks for future visitors." *Id.* at 1215. This court

found the failure to provide a warning sign was not within the discretionary function exception. The court reasoned,

a governmental failure to warn is not necessarily shielded from suit simply because a discretionary function is in some way involved. On the contrary, we have concluded that "where the challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the exception falls away and the U.S. will be responsible for the negligence of its employees." *ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir.1987) (quoting *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir.1986)).

*Id.* at 1215. The court emphasized that the failure to warn involved safety considerations rather than economic, social, or political judgments.

[T]he [National Park Service's] failure to identify and warn of the danger to barefoot visitors of hot coals on park beaches resembles more a departure from the safety considerations established in Service policies ... than a mistaken judgment in a matter clearly involving choices among political, economic, and social factors.

*Id.* at 1216.

The appellants argue that BPA's failure to install overhead ground wires is based more on the rejection of known safety hazards than a decision grounded in economic, political or social judgment. BPA argues that the relevant design decisions involved not merely engineering analysis but the balancing of many technical, economic, and even social considerations and should not be second guessed. A review of the record supports BPA's view. The overhead ground wires are placed primarily near substations to protect the transmission system equipment. The placement of these wires in these areas is necessary to prevent power outages and disruption of service to customers. The decision to place the overhead ground wires also depends upon considerations of the likelihood of lightning strikes, the importance of the equipment to

be protected, and the cost of placement of the wires. Here, as in *Kennewick*, economic considerations were dominant in the design decision. If the overhead ground wires were installed at places other than near equipment that needed to be protected, there would be no basis for limiting their placement to all power transmission lines.[4] We conclude that the decision to install overhead ground wires at certain places and not others, was made not in disregard of safety considerations as in *Summers*, but was the result of a design decision based on technical, economic, and social considerations similar to the decision not to line the Kennewick canal with concrete.

### B. Subject Matter Jurisdiction.

■ Appellants argue that even if the complained of omission on the part of BPA is within the discretionary function exception, BPA "should be deemed to have waived or no longer be permitted to avail itself of the discretionary function exception." Appellants Opening Brief 11. Generally, when federal courts find the discretionary exception to the Federal Tort Claims Act applies, the case is dismissed for lack of subject matter jurisdiction. *See, e.g., Roberts v. United States*, 887 F.2d 899, 900 (9th Cir.1989); *Frigard v. United States*, 862 F.2d 201, 203 (9th Cir. 1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989); *McQuade v. United States*, 839 F.2d 640, 642 (9th Cir. 1988). Appellants acknowledge the weight of precedent in favor of dismissal when the discretionary function exception applies, but argue that no court in this circuit had before it the unique facts presented here. These facts, as stated by appellants, include

> fourteen years [of] ... litigation, ... numerous status and pre-trial conferences, motions, three liability trials, one damage

trial, and two prior appeals to the Ninth Circuit court of Appeals. Until the third trial, the government has continuously asserted the discretionary function defense, repeatedly lost on the issue, but failed to pursue it in either the District Court or Court of Appeals.

Appellant's Opening Brief 14.

We find particularly troubling the fact that the district court specifically ruled that the discretionary function exception did not apply, and found it had jurisdiction over the case; the government then failed to raise the jurisdictional issue on the second appeal. Indeed, on appeal the government expressly stated the district court had jurisdiction pursuant to the Federal Tort Claims Act. This case thus presents a somewhat different situation than that in *Roberts v. United States*, 887 F.2d 899, 900 (9th Cir.1989), relied on by BPA, in which we remanded for consideration of the discretionary function exception notwithstanding the failure of the government to raise it either below or on appeal. In *Roberts*, we considered the issue of subject matter jurisdiction sua sponte. Here, however, the issue was raised and decided adversely to the government below but not raised on an earlier appeal.

■ Though we express concern about the government's ability to raise the discretionary function exception again at this late stage in this case, we find ourselves bound by precedent and hold that the district court properly dismissed this case for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compangnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982). The jurisdiction of district courts and the courts of appeals are limited by the Constitution and "those sub-

---

**4.** An engineer for BPA testified as follows:

Q. ... Do you know of any rational basis whereby overhead ground lines if required for safety of people on the ground could be limited to any particular area?

A. No.

Q. Do you know if changes were required to put in overhead ground lines, say, on this part of the ... line involving this case, do you know of any rational basis to limit that change to less than the entire BPA system?

A. No.

Q. Or to less than the entire United States?

A. No.

jects encompassed within a statutory grant of jurisdiction." *Id.* Subject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and principles of estoppel and waiver do not apply. *Id.* at 702, 102 S.Ct. at 2104. *See also Janakes v. United States Postal Service,* 768 F.2d 1091 (9th Cir.1985) ("parties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction").

Subject matter jurisdiction for suits against the government requires a waiver of sovereign immunity. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976); *Winebrenner v. United States,* 924 F.2d 851, 853 n. 1 (9th Cir.1991); *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). "Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void." *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). The Federal Tort Claims Act is a "grant of jurisdiction," *Dalehite v. United States,* 346 U.S. 15, 18, 73 S.Ct. 956, 959, 97 L.Ed. 1427 (1953), and provides such a waiver of sovereign immunity. *Id.* at 17, 73 S.Ct. at 958–59. Where the discretionary function exception applies, however, this jurisdictional grant is not available. *Baker v. United States,* 817 F.2d 560, 562 (9th Cir.1987) ("the terms of [the United States'] consent define the court's jurisdiction"), *cert. denied,* 487 U.S. 1204, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988).

Appellants rely heavily on *Stewart v. United States,* 199 F.2d 517 (7th Cir.1952). In *Stewart,* the government failed to raise the discretionary function exception in its original answer or in the court of appeals' review of the district court's grant of summary judgment. On remand, the government amended its answer to include a claim of lack of jurisdiction, alleging the discretionary function exception applied. *Id.* at 518. The Seventh Circuit held that the Federal Tort Claims Act "conferred general jurisdiction of the subject matter of claims coming within its purview, and the exceptions referred to are available to the government as a defense only when aptly pleaded and proven." *Id.* at 519. The court thus viewed the discretionary function exception as a waivable affirmative defense rather than an impairment of its power to adjudicate. This view of the Federal Tort Claims Act and its exceptions, however, is not followed in this circuit, or any other circuit including the Seventh. *See, e.g., Roberts v. United States,* 887 F.2d 899, 900 (9th Cir.1989) ("if the discretionary function applies, the claims should be dismissed for lack of jurisdiction"); *Frigard v. United States,* 862 F.2d 201, 203 (9th Cir.1988) (if "the discretionary function applies ... the courts lack jurisdiction"); *McQuade v. United States,* 839 F.2d 640, 642 (9th Cir.1988) (affirming district court's dismissal for lack of subject matter jurisdiction stating that if the claim is within an exception to the Federal Tort Claims Act, "the court lacks subject matter jurisdiction"); *Garcia v. United States,* 826 F.2d 806, 809 (9th Cir.1987) ("[f]ederal courts do not have subject matter jurisdiction over tort actions based on federal defendants' performance of discretionary functions"); *Chamberlin v. Isen,* 779 F.2d 522, 526 (9th Cir.1985) (affirming district court's dismissal for lack of subject jurisdiction because the discretionary function applied); *Cisco v. United States,* 768 F.2d 788, 790 (7th Cir.1985) (same).

Although we recognize that, in appellant's view, this is a somewhat harsh end to this lengthy case, we find no room to balance, as appellants request we do, the policies of validity and finality.

> [T]he overturning and dismissal of a fully litigated case because the lower court lacked subject matter jurisdiction hardly comports with notions of system economy or efficiency; it can be rationalized only in terms of the importance of maintaining the principles of federalism embodied in the limited grant of power to the federal courts by Article III of the Constitution.

Wright, Miller & Cooper, *Federal Practice and Procedure* § 3522 at 73 (1984). The Constitution and Congress prescribe the boundaries of our jurisdiction and as unfair

as that may seem against the background of a given set of facts, we cannot reach beyond it. Because we find that the discretionary function exception applies, the United States has not consented to be sued in this case and we must affirm the district court's dismissal for lack of subject matter jurisdiction.[5]

CONCLUSION:

The design decision not to install overhead ground wires at the place the appellants were injured involved considerations of economic and social policy as well as technical factors and thus was a discretionary function within the meaning of the Federal Tort Claims Act. Because the discretionary function exception applies, the district court properly dismissed the case for lack of subject matter jurisdiction.

AFFIRM.

---

**5.** Appellants also argue that the district court improperly applied the appropriate standard of care in determining the liability of BPA. Because we find that the district court properly dismissed this case due to lack of subject matter jurisdiction we do not reach this issue.