Paul HEICHMAN, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, a Delaware corporation; AT & T Corp., a New York corporation; and Does 1 through 100, inclusive, Defendants.

No. CV 95–2756–SVW(BQRx).

United States District Court, C.D. California.

Dec. 26, 1995.

Brian R. Strange, Strange & Hoey, Los Angeles, CA, for Plaintiffs.

Andrew M. White, Eric N. Landau, Melvin N.A. Avanzado, Christensen, White, Miller, Fink, Jacobs, Glaser & Shapiro, Los Angeles, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

WILSON, District Judge.

### I. BACKGROUND

On March 22, 1993, plaintiff Paul Heichman made a telephone call originating in Trinidad and terminating in Beverly Hills, California. At the time of the call, plaintiff's billing address and residence were in Los Angeles. AT & T collected a tax on the call pursuant to a Los Angeles municipal ordinance. On March 21, 1995, plaintiff filed a class action complaint in Los Angeles Superior Court attacking AT & T's collection of state and local taxes on non-intrastate telephone calls, stating causes of action for unfair business practices, breach of contract, and breach of the covenant of good faith and fair dealing. As is customary in state court, plaintiff's complaint contained no allegation with respect to the amount in controversy; the ad damnum clause merely prayed for "general damages in a sum to be ascertained at the time of trial."

On April 25, 1995, within 30 days of its receipt of the complaint, AT & T filed a petition to remove the case to this Court on the basis of both diversity and federal question jurisdiction. Plaintiff filed a first amended complaint on May 26, 1995. The amended complaint contained an allegation that jurisdiction in this Court was properly founded upon diversity of citizenship. Plaintiff's amended complaint set forth causes of action for unfair business practices, breach of contract, and an accounting, and again alleged that plaintiff's injury was caused by AT

& T's collection of state and local tax on telephone calls other than intrastate calls. Plaintiff again sought general damages in an amount to be ascertained at trial.

Plaintiff has moved to remand this action to state court, and AT & T has moved to dismiss the action.

In a declaration filed on August 28, 1995, plaintiff's counsel for the first time identified the call or calls at issue. Plaintiff's counsel stated that AT & T charged plaintiff $5.32 in state and local taxes on non-intrastate calls, and that this amount "is the only measure of damages plaintiff is currently aware of." In a further declaration filed on September 22, 1995, plaintiff's counsel stated that the $5.32 in allegedly unlawful taxes was charged on a single call made on March 22, 1993, originating in Trinidad and terminating in the city of Beverly Hills. Plaintiff also apparently was charged state and local taxes on two other non-intrastate calls, but his account was credited therefor after he complained to AT & T. Plaintiff has not been credited for the tax assessed on the Trinidad–Beverly Hills call.

For the reasons that follow, the Court has concluded that it lacks jurisdiction over this action and therefore must remand it to the state court in which it was originally filed.

## II. Diversity of Citizenship Jurisdiction

■ Title 28 U.S.C. § 1332 provides that in diversity cases, "the matter in controversy" must exceed $50,000. This case was purportedly removed to this Court on the basis of both diversity and federal question jurisdiction. Removal jurisdiction exists only where original jurisdiction would also have existed, 28 U.S.C. § 1441(a), and the removing defendant bears the burden of establishing jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992). Plaintiff's first amended complaint stated that "the matter in controversy exceeds the jurisdictional minimum of $50,000," which, if the jurisdictional facts were unchallenged, would suffice to establish jurisdiction. *Pachinger v. MGM Grand Hotel–Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir.1986).

It is axiomatic that subject matter jurisdiction may be raised by the Court sua sponte and at any time. *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") (emphasis added); *Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 932 (9th Cir.1994) ("When jurisdiction may not exist, however, the court must raise the issue even if the parties are willing to stipulate to federal jurisdiction.") (citation omitted). As the Supreme Court made clear as early as 1936, even where no party disputes a court's jurisdiction, "the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

■ In this case, neither party has offered any evidence whatever to establish that the requisite amount is in controversy. Instead, as in *Gaus*, AT & T simply recites the bare allegation that "the matter in controversy exceeds the jurisdictional minimum of $50,000." *See* 980 F.2d at 567. It hardly needs to be said that plaintiff's acquiescence in this allegation in his amended complaint (although he later apparently changed his mind and moved for remand) does not confer subject matter jurisdiction. *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975); *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951). It is irrelevant that the parties believe or wish there to be jurisdiction if the requisite jurisdictional facts do not exist, for "the subject matter jurisdiction of the federal court is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants." Wright, Miller & Cooper, Fed.Pract. & Proced.: Jurisdiction 2d § 3522, at 66–68 (2d ed. 1984).

The Supreme Court has made it eminently clear that federal courts must not hesitate to confess the absence of jurisdiction even if

doing so will reward litigants who have engaged in unpraiseworthy tactics by shuttling the proverbial apple to a different court to give those litigants a second bite. In *Finn,* the defendants had removed the action, and had successfully opposed the plaintiff's attempt to remand it. Plaintiff then won a verdict, and on appeal, defendants for the first time and in the teeth of their removal argued that the court lacked jurisdiction. The defendants prevailed, because while their conduct might have been sanctionable, nothing could alter the fact that the court never had jurisdiction. 341 U.S. at 16–18, 71 S.Ct. at 542. *See also* Wright, Miller & Cooper § 3522, at 68 n. 10; *Id.* at § 3522, at 76 ("the remedy for this conduct would be disciplinary action by the court rather than an assumption of subject matter jurisdiction that the court does not have") (*citing Page v. Wright,* 116 F.2d 449, 455 (7th Cir.1940), *cert. dismissed,* 312 U.S. 710, 61 S.Ct. 831, 85 L.Ed. 1142 (1941)).

Similarly, in *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 711 (9th Cir.1992), the defendants were permitted to contest the existence of diversity "almost four years after admitting the necessary jurisdictional facts." Even more striking is the Ninth Circuit's opinion in *Richardson v. United States,* 943 F.2d 1107 (9th Cir.1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). There, after "fourteen years of litigation, three liability trials, one damage trial, and two prior appeals," during which "the government has continuously asserted the discretionary function defense [under the Federal Tort Claims Act] [and] repeatedly lost on the issue," *id.* at 1112 (internal alterations omitted), the district court belatedly concluded that the conduct at issue fell within the discretionary function exception and thus that it had no subject matter jurisdiction. Although the Ninth Circuit recognized the harshness to the plaintiffs of permitting the government to raise this defense at such a late stage in the proceedings after failing to raise it on the two earlier appeals, *id.* at 1112–13, the Court affirmed the district court's dismissal of the action because "[s]ubject matter jurisdiction cannot be conferred upon the courts by the actions of the parties and principles of estoppel and waiver do not apply," *id.* at 1113.[1]

■ Compliance with the amount in controversy requirement is tested at the time the complaint is filed or the action is removed, *e.g., Watson v. Blankinship,* 20 F.3d 383, 387 (10th Cir.1994), and the plaintiff need only have a good faith belief at that time that the jurisdictional minimum is satisfied, *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Therefore, subsequent dismissal

---

1. In *Shaw v. Dow Brands, Inc.,* 994 F.2d 364 (7th Cir.1993), the plaintiff did not contest jurisdiction in the district court, and lost on the merits. On appeal, and with some prodding by the Seventh Circuit, the plaintiff "took up the jurisdictional issue with a vengeance." *Id.* at 366. Because of the plaintiff's ardent desire to vacate the adverse judgment by showing that $50,000 was not in controversy and the defendant's equally fervent interest in seeing the judgment affirmed, the Court of Appeals "had the privilege of witnessing a comic scene: plaintiff's personal injury lawyer protests up and down that his client's injuries are as minor and insignificant as can be, while attorneys for the manufacturer paint a sob story about how plaintiff's life has been wrecked." *Id.* Judge Cummings, writing for the panel over a spirited dissent from Judge Shadur, affirmed the trial court's exercise of jurisdiction on the ground that "by not contesting removal when the motion was originally made, and by jurisdictional statements ... in his first brief [on appeal]," the plaintiff "conceded that his claim is worth more than $50,000." *Id.* at 367–68. There can be no quarrel with the majority's state-

ment that "once removal has been perfected plaintiffs may not manipulate the process to void the removal," *id.* at 368, but the Court's application of that principle amounted to a holding that the plaintiff's failure to object to jurisdiction in the district court conferred jurisdiction upon that court. With all due respect, this Court believes that this holding flies in the face of an unbroken line of Supreme Court precedent establishing beyond dispute that subject matter jurisdiction cannot be conferred, or a party's objection to the lack thereof waived, by consent, conduct demonstrating consent, or conduct that would in other contexts give rise to estoppel. *See, e.g., Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951); *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978). This Court therefore finds Judge Shadur's dissent to be better reasoned than the majority's opinion, and accordingly declines to follow *Shaw.*

of certain claims or amendment of the prayer for relief does not destroy jurisdiction if the Court was properly seized of jurisdiction in the first place. *St. Paul,* 303 U.S. at 292, 58 S.Ct. at 591.

■ "A distinction must be made, however, between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Watson,* 20 F.3d at 387 (*quoting Jones v. Knox Exploration Corp.,* 2 F.3d 181, 183 (6th Cir.1993)). "[W]here 'the proofs adduced at trial conclusively show that the plaintiff never had a claim even arguably within the [jurisdictional] range,' a diversity action must be dismissed." *Jones,* 2 F.3d at 183 (*quoting Jimenez Puig v. Avis Rent–A–Car System,* 574 F.2d 37, 39 (1st Cir.1978)). The existence of jurisdiction depends "on the facts as they exist when the complaint is filed," *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989), and "if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff was never entitled to recover [the jurisdictional] amount," *St. Paul,* 303 U.S. at 289, 58 S.Ct. at 590, the action must be dismissed. "Lack of the jurisdictional amount from the outset—although not recognized until later—is not a subsequent change that can be ignored." I Moore's Fed.Pract. para. 0.92[1], at 835 (2d ed. 1993).

■ In the instant case, as in *Jones,* plaintiff's claims never approached the amount in controversy threshold. The only conduct by AT & T which plaintiff complains of is AT & T's collection of state and local taxes on non-intrastate telephone calls, and the only injury which plaintiff claims is the wrongful assessment of the taxes. Thus, the only damages which plaintiff could recover would be the amount of taxes wrongfully charged by AT & T, possibly together with incidental damages.

Plaintiff did not assert a demand for punitive damages. Whether or not plaintiff knew or should have known at the time he filed his complaint that his damages amounted to only $5.32, he surely knew they came nowhere near $50,000.01.

Plaintiff alleges he was charged the allegedly improper tax at a rate of ten percent. He thus would have to have made over $500,000 worth of non-intrastate telephone calls in order for his damages to exceed the jurisdictional minimum. But plaintiff complains only of being taxed on one lone $33.49 call. *See* Exhibit A to Strange Declaration. While it is not impossible that an individual could make more than $500,000 worth of non-intrastate telephone calls, it is impossible that one could fail to distinguish between making $500,000 worth of calls and making $33.49 worth of calls. Thus, plaintiff could not in good faith have believed he was charged over $50,000 in unlawful state and local taxes on non-intrastate calls.[2]

In light of all the foregoing, this is not a case where the plaintiff manipulated the judicial system by gerrymandering his case as a tactical response to the defendant's removal. On the contrary, this is a case where the plaintiff never had a claim for anything approaching $50,000.01, and thus, where diversity jurisdiction never existed. Therefore, unless federal jurisdiction is properly founded on another ground, the Court must grant plaintiff's motion to remand.

### III. *Federal Question Jurisdiction*

■ In order for this Court to have federal question jurisdiction over this action, it must "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. Federal question jurisdiction is presumed absent unless AT & T, as the party seeking to invoke this Court's jurisdiction, *McNutt,* 298 U.S. at 189, 56 S.Ct. at 785,

---

**2.** It is well-settled that in a class action such as the instant case, each plaintiff must independently satisfy the jurisdictional minimum, *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969) ("the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement"); *Zahn v. International Pa-*

*per Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973). AT & T should have known better than to make the argument that jurisdiction exists because "Plaintiff seeks relief for all members of this purported nationwide class of 10,000,000 AT & T customers," Petition for Removal at para. 6.

shows that plaintiff has either alleged a federal cause of action, *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (the familiar rule of inclusion that "a suit arises under the law that creates the action"), a state cause of action that turns on a substantial, dispositive issue of federal law, *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), or a state cause of action that Congress has transformed into an inherently federal cause of action by completely preempting the field of its subject matter, *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

In this case, plaintiff has not stated any cause of action created by federal law. His claims for breach of contract, unfair business practices, and an accounting all owe their existence to state law.

### A. *No State Cause of Action In Which A Substantial Federal Issue is Dispositive*

■ The only issue which the parties have sought to litigate in this case is whether the Los Angeles tax violates the Commerce Clause of the United States Constitution. If plaintiff's complaint revealed that his "right to relief necessarily depends on resolution of a substantial question of federal law," *Franchise Tax Board,* 463 U.S. at 27–28, 103 S.Ct. at 2856, plaintiff's action would arise under federal law even though he has asserted it under state law. *Holcomb v. Bingham Toyota,* 871 F.2d 109, 110 (9th Cir.1989) (federal question jurisdiction exists where plaintiff, "although framing his action under state law, in actuality raises an essential federal question"). *See also Smith,* 255 U.S. at 199, 41 S.Ct. at 245 ("where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such a federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction").

While the Commerce Clause issue (which the Court will assume is "substantial") has been the focus of the parties' litigation efforts, one cannot divine from the complaint (either the original state court complaint or the amended complaint filed after removal) that "plaintiff's right to relief necessarily depends on resolution" of this federal issue. *Franchise Tax Board, supra.* In fact, neither complaint so much as mentions the Commerce Clause; instead, plaintiff alleges that the tax violates "the applicable tariff laws," and in Count One relies, expressly, upon California's Business and Professions Code and, in Count Two, impliedly—since there is no federal law of contracts—upon its law of contracts.

It therefore cannot be said that plaintiff's complaint demonstrates that his right to relief necessarily turns on federal law. While the Commerce Clause issue appears central to both parties' theories of the case, the mere presence of a federal issue is not sufficient to confer federal question jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). The instant action is thus not one where a federal question is dispositive of the plaintiff's right to recover on his state law causes of action. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 810, 108 S.Ct. 2166, 2174, 100 L.Ed.2d 811 (1988) (where plaintiff's complaint states alternative state law causes of action, no federal question jurisdiction exists unless federal law is essential to each of plaintiff's state law claims); *Berg v. Leason,* 32 F.3d 422, 424–25 (9th Cir.1994) (federal law not dispositive of plaintiff's state law malicious prosecution cause of action). Since a federal question does not appear from the face of plaintiff's complaint, it is irrelevant that the Commerce Clause issue appears to be central to the case. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (well-pleaded complaint rule applies "even if both parties concede that the federal defense is the only question truly at issue").

## B. *No Complete Preemption of the Subject Matter of Plaintiff's Claims*

 Normally, under the well-pleaded complaint rule, federal preemption of a state cause of action is a defense, and therefore does not give rise to federal question jurisdiction. *Metropolitan Life*, 481 U.S. at 63, 107 S.Ct. at 1546 (*citing Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). In a few cases, however, "Congress has clearly manifested an intent" to "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546, 1548. In such a case, federal preemption does not merely abrogate a plaintiff's state law cause of action; it replaces it with a federal cause of action such that plaintiff's complaint, however phrased, inherently arises under federal law. Only in such a case is the plaintiff not "master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Otherwise, a plaintiff who "can maintain his claim on both state and federal grounds ... may ignore the federal question and assert only a state law claim and defeat removal." *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371–72 (9th Cir.), *cert. denied*, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987).[3]

 AT & T contends that the Federal Communications Act ("the Act") completely preempts the California law on which plaintiff purports to base his suit. The Supreme Court has found complete preemption in only two cases. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (§ 301 of Taft–Hartley Act completely preempts state claim arising out of contract between employer and union); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (ERISA's enforcement provisions completely preempt state contractual claim for benefits owed under ERISA). Complete preemption is an exceptional exercise of congressional power which courts should not casually find intended: absent clear statutory language, "we would be reluctant to find that extraordinary pre-emptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of

---

**3.** Two doctrines permit a federal court to establish jurisdiction by "look[ing] beyond the face of plaintiff's complaint," *Redwood Theatres, Inc. v. Festival Enters., Inc.*, 908 F.2d 477, 479 (9th Cir.1990): the complete preemption doctrine presently under examination, and the "artful pleading" doctrine. Under the "artful pleading" doctrine, a plaintiff may not defeat federal jurisdiction by dressing up in state law trappings a claim that in reality arises under federal law. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981) (declining to question factual finding of courts below that state claims removed to federal court were in reality federal claims where plaintiff had originally made same allegations in federal claim brought in federal court and had lost his federal action; holding that res judicata barred plaintiff's second suit). While perhaps theoretically distinct, the artful pleading doctrine in practice collapses into the complete preemption doctrine, because it can only be said that a claim alleged under state law necessarily arises under federal law where "the particular conduct complained of [is] governed exclusively by federal law." *Redwood Theatres*, 908 F.2d at 479 (citations omitted). The *Redwood Theatres* Court reversed the district court's finding that the plaintiff's state antitrust claims were in reality artfully pled federal antitrust claims, because "Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies." *Id.* at 480 (*quoting California v. ARC Am. Corp.*, 490 U.S. 93, 102, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989)).

In other words, where as in this case, there is no issue of federal claims being 'artfully' pled under state law in order "to circumvent the res judicata impact of a federal judgment," *Price v. PSA, Inc.*, 829 F.2d 871, 876 n. 4 (9th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988), "[t]he propriety of invoking the 'artful pleading' doctrine depends on whether federal law has 'completely pre-empted' Plaintiff's state law cause of action." *Boyle v. MTV Networks, Inc.*, 766 F.Supp. 809, 814 (N.D.Cal. 1991). *See also Redwood Theatres*, 908 F.2d at 481 (no federal question jurisdiction because plaintiff's state claims not barred by res judicata or preempted by federal law); *Sullivan*, 813 F.2d at 1376 (*Moitie* is limited to context of removal of state claims precluded by res judicata effect of a federal judgment); *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1403 (9th Cir.1988) ("we concluded in *Sullivan* that a plaintiff's state law complaint is 'artfully pleaded' when it is drafted to avoid stating allegations or claims already resolved against the plaintiff by a prior federal judgment"). The Court will therefore not engage in a separate analysis of the artful pleading doctrine.

the well-pleaded complaint rule." *Metropolitan Life,* 481 U.S. at 64–65, 107 S.Ct. at 1547.

In *Metropolitan Life,* the Supreme Court relied on the fact that ERISA contained jurisdictional provisions very similar to § 301 of the Taft–Hartley Act, which the Court had found in *Avco* to be the first, and until *Metropolitan Life* the only, example of complete preemption. *Id.* at 65–66, 107 S.Ct. at 1547. Since ERISA was enacted after the *Avco* decision, the statutory language paralleled § 301, and the legislative history referred implicitly to the *Avco* holding, the Court reasoned that Congress intended to completely preempt the field such that the plaintiff's state claim was necessarily transformed into a federal claim. *Id.* The Federal Communications Act was enacted before *Avco* first recognized the doctrine of complete preemption, so it is difficult to ascertain whether Congress intended the Act to be completely preemptive. *See Boyle v. MTV Networks, Inc.,* 766 F.Supp. 809, 816 (N.D.Cal.1991).

The Act does contain one strong indication that it was not intended to completely preempt the field: the savings clause. Section 414 provides: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.

In support of its complete preemption argument, AT & T relies upon *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486 (2d Cir.1968), and *McDermott v. Western Union Telegraph Co.,* 746 F.Supp. 1016 (E.D.Cal.1990). In *Ivy Broadcasting,* the Second Circuit held that even though the plaintiff's state claims of negligence and breach of contract in the installation of phone lines were outside the coverage of the Act, the Act was intended to preempt all grounds for liability of phone companies; the plaintiff's state claims were thus transformed into federal common law claims. 391 F.2d at 492. The *Ivy Broadcasting* court did not address the savings clause. In *McDermott,* jurisdiction was founded upon diversity, so there was no issue regarding complete

preemption. Relying on *Ivy Broadcasting,* the court in *McDermott* held that federal law applied to the plaintiff's state causes of action. 746 F.Supp. at 1019–20.

The Court is unpersuaded by AT & T's argument. It should first be noted that the question whether to apply federal or state law is totally distinct from the question whether there is federal jurisdiction. *E.g., Boyle,* 766 F.Supp. at 816. *McDermott* is therefore simply inapposite. Since the Supreme Court's decisions in *Metropolitan Life, Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987), and *Franchise Tax Board,* 463 U.S. at 25–26, 103 S.Ct. at 2854–55, elucidated the issue of complete preemption, AT & T's complete preemption argument has been rejected by several courts and accepted by none.[4]

The district court in *Financial Planning Institute, Inc. v. American Telephone & Telegraph Co.,* 788 F.Supp. 75, 77 (D.Mass. 1992), squarely confronted the question whether Congress intended to completely preempt the field of interstate telecommunications such that the plaintiff's state law claims for breach of contract and unfair business practices would be transformed into federal claims. The court acknowledged the *Ivy Broadcasting* decision but nonetheless answered in the negative: "Not only did Congress *not* express an intent to provide for an exclusive federal remedy for a breach of contract for telecommunications services, but by enacting the savings clause, Congress specifically provided for the preservation of existing statutory and common law claims in addition to federal causes of action." *Id.* at 77.

In *American Inmate Phone Systems, Inc. v. US Sprint Communs. Co.,* 787 F.Supp. 852 (N.D.Ill.1992), the plaintiff sued in state court for breach of contract and unfair business practices, and the defendant removed. The court held that the Act did not completely preempt the plaintiff's state claims, and thus remanded for lack of jurisdiction. It relied on the savings clause, and on the fact that the contract which the defendant was

---

4. The Second Circuit followed *Ivy Broadcasting* in *Nordlicht v. New York Telephone Co.,* 799 F.2d 859, 862 (2d Cir.1986), a case decided before *Metropolitan Life* and *Caterpillar.*

alleged to have breached "impos[ed] duties different than those found in the Communications Act." *Id.* at 857. If the plaintiff's claims had involved the quality of Sprint's service or the reasonableness of its rates, the claims would have been necessarily federal under § 201(b) of the Act, but since they alleged duties outside the subject matter of the Act, the Act did not transform the plaintiff's state causes of action into federal causes of action. *Id.* at 856–57. Therefore, notwithstanding the possible existence of a federal defense to liability on the plaintiff's claims, the claims were properly brought as state causes of action. *See also Comtronics, Inc. v. Puerto Rico Telephone Co.,* 553 F.2d 701, 708 n. 6 (1st Cir.1977) ("we read § 414 as preserving causes of action for breaches of duties distinguishable from those created by the Act, as in the case of a contract claim"); *Bruss Co. v. Allnet Communication Services, Inc.,* 606 F.Supp. 401, 411 (N.D.Ill.1985) (same); *Kellerman v. MCI Telecommuns. Corp.,* 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986) (same).

In *In re Long Distance Telecommunications Litigation,* 831 F.2d 627 (6th Cir. 1987), the Sixth Circuit held that the Act's savings clause preserved the plaintiffs' state law claims of misrepresentation. The court observed that the Act's savings clause was nearly identical to the savings clause of the Aviation Act, which the Supreme Court in *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 300, 96 S.Ct. 1978, 1985, 48 L.Ed.2d 643 (1976), found to permit a state law claim. 831 F.2d at 634.[5]

Finally, in *Boyle,* the plaintiff claimed a violation of California's Business and Profes-

sions Code stemming out of alleged illegal gambling activities sponsored by the defendant. 766 F.Supp. at 812. The removing defendant contended that the state law upon which the plaintiff relied was inconsistent with the Federal Communications Act, and thus that the plaintiff's claim was preempted. *Id.* at 814. Since the defendant's argument came in only as a defense, removal jurisdiction was absent under the well-pleaded complaint rule unless the Act completely preempted the area of state law at issue. *Id.* The Court rejected the defendant's complete preemption argument on the grounds that the Act does not evidence a clearly manifested intent to make claims such as the plaintiff's removable, and that plaintiff's claims did not fall within the Act's civil enforcement provisions because they did not allege breach of any duty created or regulated by the Act. *Id.* at 816.

Like the plaintiffs' claims in *American Inmate, Boyle,* and *Comtronics,* plaintiff's causes of action in this case do not involve the quality of AT & T's services or the reasonableness of its rates. Nor do the alleged breaches arise out of a duty created by the Act. Instead, plaintiff's claims are based on an alleged contractual agreement regarding the collection of taxes and they arise out of AT & T's obligation, imposed by local law, to collect taxes on what it sells, just as a retailer must collect taxes on goods it sells. In short, plaintiff's claims do not implicate the goals of uniform and equal service and reasonable rates which *Ivy Broadcasting* held justified federal preemption, and might therefore not even be subject to defensive preemption, *see, e.g., Cooperative Communications, Inc. v. American Telephone & Tele-*

---

**5.** The court in *In re Long Distance* did not speak in terms of complete preemption or mention *Metropolitan Life,* perhaps because that decision had only recently been issued at the time the Sixth Circuit decided its case, or perhaps because it was not necessary for the court to discuss complete preemption; it is not entirely clear from the opinion. *See* 831 F.2d at 628, 632–33. Courts' imprecision in distinguishing between ordinary preemption, which does not affect jurisdiction, and complete preemption, which gives rise to federal removal jurisdiction, complicates both the analytical task of deciding whether complete preemption applies in a given case as well as the rhetorical task of articulating that decision

in a clear manner. *Cf. Amoco Production Co. v. Sea Robin Pipeline Co.,* 844 F.2d 1202, 1205 (5th Cir.1988) (referring to well-pleaded complaint rule as "Serbonian Bog"). These problems are less acute in this case, however, because a finding that the Act does not preempt a particular claim a fortiori constitutes a finding that the Act does not *completely* preempt that claim; if federal law does not abrogate a state cause of action, it can hardly be said to replace it, and if federal law merely supplements state law's provision for a right of action, the plaintiff is master of his or her claim and can choose to sue under state law only.

*graph Corp.,* 867 F.Supp. 1511 (D.Utah 1994), although the Court of course intimates no opinion on this question.

Therefore, in light of "the plain meaning of the savings clause," *Financial Planning Institute,* 788 F.Supp. at 77, and the precedents discussed above, and mindful of the Supreme Court's admonition that complete preemption should be found only in "extraordinary" cases, *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430, the Court concludes that the Federal Communications Act does not transform plaintiff's state law causes of action for breach of contract, unfair business practices, and an accounting into federal causes of action. Whether some defense grounded in federal law might apply to bar recovery or some provision of federal law might need to be construed in evaluating plaintiff's case are separate questions irrelevant to the existence of removal jurisdiction.

In light of all the foregoing, the Court holds that none of plaintiff's claims arises under federal law. Removal was thus improper, and the Court must remand this action to the state court from whence it came for lack of subject matter jurisdiction.

### IV. *PLAINTIFF'S MOTION FOR AT-TORNEY'S FEES*

■ Plaintiff has moved for an award of attorney's fees to compensate him for having to respond to defendant's improper removal. The Court has discretion to award fees upon remand of an improperly removed action. Title 28 U.S.C. § 1447(c) provides that a remand order "may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." In addition, Fed.R.Civ.P. 11 confers upon the Court the authority to impose sanctions for frivolous or improper representations to the Court.

The Court does not believe that an award of attorney's fees in this case would further the ends of justice. As evidenced by the length of this Order, the jurisdictional questions at issue in this case are complicated and difficult. Moreover, the Court is reluctant to reward plaintiff in view of the fact that plaintiff alleged compliance with the amount in controversy requirement without any realis-

tic basis in fact for doing so, as well as the fact that plaintiff appeared to accept this Court's jurisdiction for a time and only changed his mind, possibly for strategic reasons, after filing an amended complaint in this Court which stated that jurisdiction was proper.

### V. *Conclusion*

The Court holds that it has neither diversity nor federal question jurisdiction over plaintiff's action, and thus that the action was improperly removed. The Court hereby GRANTS plaintiff's motion to remand and DENIES plaintiff's motion for attorney's fees. This action is REMANDED to the Superior Court for the County of Los Angeles.

IT IS SO ORDERED.